James W. RILEY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Dec. 12, 1989.
Decided: Dec. 21, 1990.

Lawrence J. Connell (argued), Postconviction Relief Clinic, Widener University School of Law, Wilmington, for appellant.

Jeffrey M. Taschner (argued), and Peter N. Letang, Deputy Attys. Gen., Dept. of Justice, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en Banc.

HORSEY, Justice:

Defendant, James W. Riley, appeals from two decisions of Superior Court, the first, dated April 29, 1988, and a second, dated April 21, 1989, each denying defendant postconviction relief. Defendant seeks relief from his 1982 convictions in trial by jury in Superior Court of two counts of murder in the first degree, intentional murder and felony murder, and his sentence to death for felony murder. In 1985, this Court, sitting *en banc* on Riley's direct appeal, unanimously affirmed defendant's convictions and sentence. *Riley v. State*, Del.Supr., 496 A.2d 997 (1985) (*"Riley I"*), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). Though defendant raises numerous postconviction issues, we find none to have merit. Accordingly, we affirm the decisions below.

Defendant Riley was convicted and sentenced to death for the 1982 murder of a liquor store owner committed in the course of an armed robbery. In his direct appeal, Riley raised, and this Court addressed, eleven issues in the guilt phase and seven issues in the penalty phase, two raised by Riley and five raised by the *amicus*, The American Civil Liberties Union. In rejecting defendant's multiple claims of error, we ruled, in part, that defendant was not denied the right to trial by an impartial jury as a result of the State's asserted use of peremptory challenges to strike prospective black jurors for racial or impermissible reasons. *Riley I*, 496 A.2d at 1009–1013.

Thereafter Riley, after a change of counsel, sought postconviction relief, raising multiple claims. In 1988, Superior Court, after evidentiary hearing, selected out and addressed three of defendant's claims: the State's exercise of its peremptory challenges should be reviewed in the light of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); the adequacy of the trial court's *voir dire* of juror attitude on the death penalty; and a claim of ineffective assistance of counsel at the penalty phase. The court, in a twenty-seven page

unreported decision, rejected each of the claims as being without merit.[1]

Riley moved for reargument and docketed an appeal in this Court. The case was remanded, and defendant's motion for reargument was granted. The court determined that Riley had established a *prima facie* case of discrimination based on the post-*Riley I* standard announced in *Batson* and was entitled to an evidentiary hearing. After a further evidentiary hearing, however, Superior Court, in 1989, applying *Batson*, found no merit to Riley's claim of discrimination. The court stated:

> The State in this case provided race-neutral explanations for the peremptory challenges on all three black jurors. After examining the demeanor and credibility of the witnesses and prosecutors at the evidentiary hearing, I believe the State exercised its peremptory challenges entirely within the strictures of the Fourteenth Amendment. No factual basis exists for a successful claim of an equal protection violation. The State successfully rebutted any *prima facie* showing of discrimination in jury selection based upon race. Therefore, the motion for reargument based upon an alleged violation of equal protection under the Fourteenth Amendment to the United States Constitution and under the State constitutional right to trial by a fair and impartial jury is denied.

The court also examined defendant's remaining claims for postconviction relief and found them to have been previously raised and rejected either by this Court in *Riley I* or by Superior Court in its 1988 decision. Riley then docketed this appeal. He seeks our review of not only his claims ruled upon by Superior Court in 1988 and 1989, but of his other claims for relief which that court summarily rejected in 1989.

I

■ Of the eight claims Riley raises, we find that four were previously addressed by us in Riley's direct appeal. Those claims are:

(1) the trial court's denial of Riley's request for appointment of co-counsel and employment of an investigator;

(2) the trial court's denial of Riley's motion for change of venue for adverse pretrial publicity deprived Riley of trial by an impartial jury;

(3) that statements of the prosecutor and of the trial court during the penalty hearing were prejudicial; and

(4) that this Court's proportionality review in *Riley I* was flawed.

We agree with Superior Court that each of the issues underlying these claims was addressed by this Court in *Riley I*, 496 A.2d at 1014–1017, 1023–1027, and therefore is precluded from reconsideration under Superior Court Criminal Rule 61(i)(4). The Rule provides:

**(i) Bars to Relief.**

\* \* \* \* \* \*

**(4) Former Adjudication.** Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

In summary, we find no merit to defendant's challenge to the "universe" of cases from which this Court determined in 1985 that the death penalty imposed upon defendant was not disproportionate. *Riley I*, 496 A.2d at 1027. The issues underlying the three remaining claims were carefully addressed in *Riley I;* and we conclude that the interests of justice would not be served by any further consideration of them. Justice does not require that an issue that has been previously considered and rejected be revisited simply because the claim is refined or restated. *See Younger v. State*, Del.Supr., 580 A.2d 552, 556 (1990); *Nicholson v. State*, Del.Supr., 582 A.2d 936 (1990) (ORDER). To the extent that any of Riley's particularized claims were not asserted at trial and on direct appeal, we

---

**1.** The decision was rendered by the judge of Superior Court who had presided over defendant's trial in 1982. Shortly thereafter, the judge retired and the case was reassigned.

decline to address them as procedurally barred under the cause and prejudice standard of Rule 61(i)(3).[2] *Younger,* 580 A.2d at 556.

We turn to Riley's four remaining claims for postconviction relief:

(5) that the trial court's instructions to the jury in the penalty phase were constitutionally inadequate;

(6) that Superior Court in its 1989 decision improperly applied the standards of *Batson v. Kentucky* in determining that the prosecution had satisfactorily explained its use of peremptory challenges to exclude all blacks from the jury;

(7) that in conducting *voir dire* of the jury venire, the trial court violated defendant's Eighth Amendment rights by failing to probe whether jurors would automatically impose death upon a finding of guilt; and

(8) that defendant was denied effective assistance of counsel in the penalty phase of the trial by his attorney's failure to present mitigating evidence.

## II

We first take up Riley's claim that the jury instructions in the penalty phase hearing were constitutionally inadequate and not in compliance with 11 *Del.C.* § 4209, as construed and applied by this Court in *Whalen v. State,* Del.Supr., 492 A.2d 552 (1985). In *Whalen,* we recognized that sentencing procedures:

> must not create 'a substantial risk that the [death penalty will] be inflicted in an arbitrary and capricious manner'. *Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (plurality opinion). Discretion in sentencing may not be eliminated completely, but must instead be 'directed and limited'. *Id.* at 189, 96 S.Ct. at 2932. Thus, it is the trial judge's duty to guide the jury's discretion by ensuring that they under

stand the bases for imposing a death sentence, and comprehend their responsibilities in applying such criteria. It is only through the careful use of jury instructions that the judge properly discharges this function.

492 A.2d at 559. *Whalen* then laid down a set of prerequisites against which to test the adequacy of the penalty instructions there before us. Riley seeks to employ those prerequisites for a purpose for which they were not intended. Riley reads *Whalen* as establishing a pattern set of penalty phase jury instructions from which no deviation will be permitted in determining whether a given set of instructions passes constitutional muster.

Riley reads more into *Whalen* than was intended. The short answer is that *Whalen* is a fact-driven decision and the flawed instructions found in *Whalen* are absent in *Riley.* Further, as will be seen, the instructions in *Riley* are virtually identical with those which this Court approved in *Flamer* just seven months before *Whalen* was issued. *Flamer v. State,* Del.Supr., 490 A.2d 104 (1983) (*"Flamer I"*), *cert. denied* (guilt phase), 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983), *cert. denied* (penalty phase), 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985). If we intended our analysis and rulings in *Whalen* to implicate *Flamer I* and its progeny, including *Riley,* we would have included *Flamer I* in our *Whalen* analysis.

Under 11 *Del.C.* § 4209(d), the task of the jury in determining the sentence for first degree murder is defined:

> A sentence of death shall not be imposed unless the jury or judge, where appropriate, finds:
>
> a. Beyond a reasonable doubt at least 1 statutory aggravating circumstance; and

---

**2.** Superior Court Criminal Rule 61(i)(3) provides:

**(i) Bars to Relief.**

\* \* \* \* \* \*

**(3) Procedural Default.** Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this Court, is thereafter barred, unless the movant shows

(A) cause for relief from the procedural default and

(B) prejudice from violation of the movant's rights.

b. Unanimously recommends, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. 11 *Del.C.* § 4209(d). The penalty phase instructions in *Riley I* and *Flamer I* complied with section 4209's mandate that the jury understand the two-step analysis. *See Whalen,* 492 A.2d at 562. Indeed, the instructions in both *Flamer* and *Riley,* in informing the jury of their task, far surpassed the instructions in *Whalen.* A side-by-side comparison of the complete instructions in *Riley* and *Flamer* is found at Appendices A and B. The entire *Whalen* penalty phase instruction is found in footnote 4 below.

■ *Flamer I, Riley I* and *Whalen* are in accord as to the essentials of a penalty phase jury instruction in a capital case. First, the instruction must guide the jury in the first step of their consideration of mitigating and aggravating circumstances. In this respect, the *Riley* and *Flamer* instructions used identical language:

An aggravating circumstance is a factor which tends to make the defendant's conduct more serious, or imposition of a penalty of death appropriate. A mitigating circumstance is any factor which tends to make the defendant's conduct less serious or the imposition of a penalty of death inappropriate.

Second, the court must plainly inform the jury of their crucial task (the second step) of weighing mitigating and aggravating factors in arriving at the appropriate penalty of life or death. Again, the *Flamer* and *Riley* instructions were identical:

... You are to weigh any mitigating factors against the aggravating factors to determine the penalty. If you have a reasonable doubt about the existence of any statutory aggravating circumstance, you must give the defendant the benefit of that reasonable doubt and find that that statutory aggravating circumstance does not exist.... if you are not unanimous in your recommendation to impose

the death penalty, or you cannot agree unanimously as to your recommendation, then the Court is bound to impose a sentence of life imprisonment without benefit of probation or parole.

The only significant difference between the entire *Riley* and *Flamer* instructions to the jury was the case-specific portion of each charge dealing with the aggravating circumstances which the State alleged in each case.

Third, the jury must understand that it retains the option to recommend a life sentence despite a finding of a statutory aggravating circumstance. *Flamer I,* 490 A.2d at 128; *Whalen,* 492 A.2d at 562. In the penalty phase in *Flamer,* defendant argued on direct appeal, as Riley does in postconviction relief, that the penalty instructions were legally insufficient as to the life option: for the court's failure to apprise the jury of its retention of the option to recommend a life sentence, notwithstanding its finding of a statutory aggravating circumstance. In *Flamer,* this Court, in September 1984, rejected this argument, finding *Flamer's* penalty phase instructions adequate and sufficient as a matter of law. *Flamer I,* 490 A.2d at 128. We stated:

We have carefully scrutinized the six and one-half pages of jury instructions in the transcript and conclude that the jury charge constituted a correct statement of the substance of the law of sentencing in First Degree Murder cases and was not so deficient that it rises to the level of reversible error.

\* \* \* \* \* \*

Although the Trial Court did not instruct the jury explicitly that it could still recommend life imprisonment despite finding the presence of a statutory aggravating circumstance, we believe that the charge, viewed *in toto,* adequately apprised the jurors that a finding of a statutory aggravating circumstance did not automatically require them to recommend the death penalty and that life imprisonment was an available alternative.

*Id.* The trial court's instructions in *Riley* are virtually identical with those which we reviewed and found sufficient in *Flamer.*

 *Whalen* and *Flamer* are also in accord that the adequacy of a given set of instructions is a fact specific determination, to be made in the context of the charge as a whole. Finally, the guiding principle for assessing the adequacy of a jury instruction remains constant through *Flamer I, Riley I* and *Whalen.* A defendant is entitled to a correct substantive statement of the law, but not to have any *particular instruction. Flamer I,* 490 A.2d at 128. Jury instructions are adequate if they are "such as to enable the jury to intelligently perform its duty in returning a verdict." *Storey v. Castner,* Del.Supr., 314 A.2d 187, 194 (1973); *Whalen,* 492 A.2d at 559. Applying these rules of construction to *Riley*'s penalty phase instructions, we hold that *Riley*'s instructions must be sustained as not only consistent with *Flamer I* but with the underlying precepts of *Whalen.*[3]

The jury instructions given at the penalty phase in *Whalen* were quantitatively and qualitatively inferior[4] to those in *Riley* and *Flamer.* The *Whalen* instructions were inadequate because they amounted to "no more than reading the relevant portions of 11 *Del.C.* § 4209 to the jury." *Whalen,* 492 A.2d at 561. The instructions in *Whalen* told the jury to "consider any mitigating or aggravating circumstances" but failed to so much as define an aggravating or a mitigating factor. In contrast, the penalty phase instructions in both *Flamer* and *Riley* went far beyond the instructions given in *Whalen.* The *Riley–Flamer* instruction provided guidance to the jury in conducting the two-step analysis required by 11 *Del.C.* § 4209. The instruction explained the meaning and the importance of mitigating and aggravating factors to the task the jury is charged with under the statute, thus satisfying the critical concern of *Whalen:* that the trial judge "guide the jury's discretion by ensuring that they understand the bases for imposing a death sentence, and comprehend their responsibilities in applying such criteria." *Whalen,* 492 A.2d at 559. The trial court in *Riley* even went one step further than in *Flamer* in instructing the jury. The *Riley* court also read through

---

**3.** We subject the instructions in the instant case and in *Flamer* to scrutiny under the analysis of *Whalen.* We do so because *Whalen* does not announce a "new rule," but flows from existing case law and statutes. *Whalen* did not break "new ground," nor does it impose a "new obligation" on the State which would make it a new rule. *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256, 275 (1989); *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334, 349, *reh'g denied,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989).

**4.** The full text of the *Whalen* instruction is as follows:

Ladies and gentlemen, the sole matter for your determination at this time is the penalty to be imposed upon the defendant for the conviction of first degree murder.

You have heard counsel for the State and the defendant express their positions on which penalty should be imposed. While it is proper for you to consider the position of each attorney upon this issue, the matter is entirely within your discretion after considering the evidence and applying the law contained in these instructions.

In reaching your determination, the jury may consider any mitigating or aggravating circumstances raised by the evidence either at this hearing or at the trial.

The sentence of death shall not be imposed unless you find unanimously and beyond a reasonable doubt at least one statutory aggravating circumstance and then unanimously recommend after weighing all the relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender that a sentence of death be imposed.

You may consider the following statutory aggravating circumstance: In this case the murder occurred during the commission of rape.

A recommendation of death is binding upon the Court. If you do not recommend the death penalty, a sentence of life imprisonment without benefit of probation or parole will be imposed.

A reasonable doubt is defined as a substantial doubt.

I will hand you a copy of these instructions and a questionnaire which your forelady will fill out. It is self-explanatory, and when you return to the courtroom it will simply be handed to the clerk and read in open court by me.

*Whalen,* 492 A.2d at 556. *Compare* Appendices A and B.

the interrogatories with the jury panel, further emphasizing their statutory task. *See Appendix B.*

The instructions to the jury in *Riley* and *Flamer* are consistent with *Whalen*'s command that the jury carefully consider all mitigating and aggravating circumstances. The particular words used in articulating such a command are not necessarily determinative of their adequacy. Viewed as a whole, the instructions in *Riley* and *Flamer* adequately apprised the jury of their statutory task. The *Whalen* directive that the jury charge must include permission to "recommend against the death penalty no matter what aggravating circumstances are found to exist," 492 A.2d at 560, may be variously phrased to accomplish its purpose: the jury's careful consideration of all mitigating factors and their engaging in the weighing process required by statute. *See Blystone v. Pennsylvania,* —— U.S. ——, 110 S.Ct. 1078, 1083, 108 L.Ed.2d 255, 264 (1990) ("The requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence").

The principles enunciated in *Whalen* for measuring the adequacy of penalty phase instructions were intended only as instructional guidelines and are not to be considered as setting forth a pattern of jury instructions from which no deviation will be permitted. We decline to find *Riley*'s instructions to be constitutionally deficient simply because the *Riley* instructions are phrased in a format that does not precisely mirror *Whalen*. More specifically, we are satisfied that the jury in *Riley* understood that it was required to unanimously conclude that the aggravating circumstances outweighed those in mitigation. We are also satisfied that the jury understood that, in the event of its failure to unanimously agree upon the imposition of a death penalty, an imposition of life imprisonment would result. Finally, we find no basis for concluding that the instructions confused the jury over the available aggravating statutory circumstances.

### III

■ Riley's next contention, that the State exercised its peremptory challenges for racial reasons, we find to be simply a renewed attempt to reopen previously settled issues. In *Riley I*, we set forth a legal analysis functionally identical to the Supreme Court's analysis later articulated in *Batson*. 476 U.S. at 79, 106 S.Ct. at 1712, 90 L.Ed.2d at 69. In *Riley I* we found that Riley's constitutional right to an impartial jury had not been violated. 496 A.2d at 1009. The Superior Court, after an evidentiary hearing on Riley's motion for postconviction relief, held that Riley had not been denied equal protection as a result of the State's use of peremptory challenges. The court found that the State had provided race-neutral explanations for its peremptory challenges. We find no error in Superior Court's rejection of Riley's *Batson* claim. *See Holland v. Illinois,* —— U.S. ——, 110 S.Ct. 803, 807, 107 L.Ed.2d 905, 916 (1990) (the Sixth Amendment fair cross-section requirement of an impartial jury does not deprive a party of the right to exercise peremptory challenges on racial or any other grounds from a venire that *otherwise* meets Sixth Amendment cross-sectional standards of representativeness). Moreover, we reaffirm our earlier decision sustaining the State's peremptory challenges on state constitutional grounds. *Riley I*, 496 A.2d at 1010–1013.

### IV

■ We turn to Riley's claim that he was denied his Sixth and Eighth amendment right to an impartial jury by a flawed *voir dire*. Riley contends that although the jurors were queried as to whether or not they could impose a penalty of death upon a finding of guilt, they were not queried as to whether they would *automatically* impose a death penalty upon a finding of guilt. We find no merit in defendant's claim. The primary purpose of *voir dire* is to establish a juror's lack of bias or prejudice and thus secure for the defendant a jury able to vote impartially upon the evidence and the law presented at trial. *Riley I*, 496 A.2d at 1004. As we noted in *Riley*

*I,* the *voir dire* questions posed by the court were formulated in keeping with 11 *Del.C.* § 3301. That statute establishes the parameters by which the trial court can determine through *voir dire* the qualifications of jurors to sit in capital cases. In *Hooks v. State,* Del.Supr., 416 A.2d 189, 194 (1980), we found section 3301 to be consistent with the constitutional requirements of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, *reh'g denied,* 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186 (1968). *Compare Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) (holding that a class of prospective jurors unalterably opposed to the death penalty does not constitute a "distinctive group" for purposes of fair cross section requirement). It would be redundant to require the trial court to further interrogate the jurors as to whether they would automatically impose the death penalty upon a finding of guilt.

## V

Finally, defendant argues that trial counsel was ineffective in the penalty phase of trial for failing to proffer available mitigating evidence portraying defendant's life from birth to the time of his trial. The proffer's purpose was to "individualize" defendant and thereby provide the "compassion" needed for the jury to conclude that defendant should receive a sentence of life imprisonment rather than death. Defendant's argument in mitigation is premised on evidentiary hearing testimony of three expert witnesses: two criminal law defense attorneys, a New Jersey public defender and a District of Columbia attorney whose private practice specialty was defending capital murder cases, and a state of Maryland board certified forensic psychiatrist who had testified in more than two hundred criminal cases. Based on an examination of defendant, Dr. Neil Blumberg diagnosed defendant, in 1987, as suffering from "possible organic brain damage" and from a "severe impairment of his personality as a result of the neglect he experienced as a youth ... who grew up with no adult role model for emotional or moral development."

The mitigating evidence which trial counsel should have presented, according to defendant's evidentiary hearing experts, was defendant's life story, as portrayed by Dr. Blumberg: that defendant came from a family with a substantial history of alcoholism involving his mother, his father and a brother, the brother also having a history of substance abuse; that defendant was raised by a mother who was frequently absent for extended periods from their home in Philadelphia; that defendant began drinking and using drugs at the age of twelve; that defendant's parents' alcoholism became a source of acute embarrassment to defendant who at an early age developed an antisocial behavior (fire setting) out of a feeling of anger; that defendant was a slow learner who finally dropped out of school in the tenth grade; and that by age sixteen, defendant was chronically addicted to either drugs or alcohol.

Counsel is also charged with ineffectiveness in failing to conduct a proper search for family and relatives to present defendant's life story and for failing to retain an expert in the behavioral science field, such as a forensic psychiatrist, to present to the jury a psychiatric analysis of defendant based on his life story. In particular, counsel is asserted to have been ineffective: in failing to locate defendant's sister and two uncles as possible witnesses; and for failing to call as penalty hearing witnesses defendant's mother, his uncles, and defendant himself. Without such evidence, defendant asserts that trial counsel developed no "coherent" trial strategy and provided the jury with *no* rational basis for exercising mercy.

 Riley's claim of ineffective assistance of counsel must be reviewed under the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). To establish a claim of ineffective assistance of counsel requiring reversal, a convicted defendant has two burdens. The defendant must first "show that counsel's

representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Secondly, defendant must show prejudice, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In applying the dual *Strickland* test to Riley's claim, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

Superior Court, in its unreported decision following evidentiary hearing, carefully addressed each of defendant's contentions and concluded that trial counsel's conduct was not constitutionally deficient under *Strickland* and pertinent federal authorities. The court found that counsel's search for favorable lay witnesses from defendant's family and relatives was reasonable under the circumstances and that counsel's investigation was thwarted for reasons beyond counsel's control. The court further found that counsel's decision not to call defendant's mother and defendant himself as witnesses in the penalty hearing was reasoned and did not constitute ineffective representation. The court also found that counsel's failure before trial to request funds to retain a psychiatrist or mental health professional to develop a social history of defendant for use in the penalty phase was not, under the circumstances, constitutionally ineffective representation. Finally, the trial court was not persuaded that the recounting of defendant's reasons for resorting to alcohol and drugs would be viewed by the jury with compassion and accepted as a mitigating circumstance.

Our standard of review of a claim of ineffective assistance of counsel determined after evidentiary hearing is well defined. "This Court will not disturb conclusions of fact made by the trial judge which are supported by competent evidence." *Albury v. State*, Del.Supr., 551 A.2d 53, 60 (1988). Questions as to credibility of witnesses and resolution of conflicts in testimony are solely at the discretion of the

trial judge. *Id.* (quoting *Tyre v. State*, Del.Supr., 412 A.2d 326, 330 (1980)). Absent an abuse of discretion, this Court will not upset the findings of fact or conclusions of law of the trial judge. *Albury*, 551 A.2d at 60. We apply this deferential standard in conjunction with the mandate of *Strickland* that we avoid the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

### A.

We first address Riley's claim that trial counsel's investigation of defendant's family in preparation for trial was ineffective. Effective representation by counsel depends upon "adequate investigation and pre-trial preparation." *Crisp v. Duckworth*, 743 F.2d 580, 583 (7th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985). However, the cooperation of both client and family is a prerequisite. *See Mitchell v. Kemp*, 762 F.2d 886, 890 (11th Cir.1985), *cert. denied*, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987). The trial court, after evidentiary hearing, concluded that any shortcomings in counsel's investigation into Riley's life and family for mitigating evidence was attributable principally to defendant's inhibited or protective attitude about his family and to their lack of accessibility. Applying established law, we must affirm the trial court's finding that defense counsel, under the circumstances, adequately investigated and presented mitigating evidence. The finding is supported by the record and clearly is not an abuse of discretion. *Albury*, 551 A.2d at 60.

The trial court found that trial counsel had conducted an adequate search for family members who might provide mitigating information. The court concluded that trial counsel had located Riley's sister and was not to blame for not locating Riley's two uncles. The record of the evidentiary hearing indicates that a close family friend of Riley's, and counsel's contact person, had in fact informed one of Riley's uncles of the impending trial, but the uncle did not come forward because he found the infor-

mation was too indefinite. The same contact gave counsel the uncle's name but did not provide counsel with his address. Riley's other uncle conceded that neither defendant nor his family would have known how to reach him in 1982. The trial court found that Riley's sister was "uncooperative."

Defendant, as well as trial counsel, had corresponded with Riley's sister in advance of trial, yet the sister was either unwilling or unable to come forward and assist in Riley's defense. On the record before us, counsel cannot be found ineffective for failing to find Riley's sister when the record clearly indicates her receipt of letters from counsel and defendant and her unwillingness to help the defendant. *See Mitchell v. Kemp*, 762 F.2d at 890. We decline to find that counsel was ineffective for his failure to locate defendant's uncles as possible witnesses in mitigation. *See Porcaro v. United States*, 641 F.Supp. 1375, 1386 (D.Mass. 1986).

However, even if defendant's two uncles had been available and willing to testify at trial, defendant has not established that they would have provided the kind of social history testimony envisioned by Dr. Blumberg. Indeed, one of defendant's two uncles testified at the evidentiary hearing that he always considered defendant to be "bright" but that he had seen him only occasionally since they were both very young, and seldom in the five years preceding the crime. This testimony runs counter to Riley's present contention that his poor background and low intelligence should have been emphasized as mitigating factors. On this record, we cannot find trial counsel's investigation of defendant's family to be constitutionally inadequate.

### B.

■ We turn to defendant's claim that counsel was ineffective for not calling as witnesses in mitigation defendant's mother, Gladys Riley (now deceased), and defendant himself. The trial court found "excellent tactical reasons" for trial counsel's decision not to call either witness. It appears from the record that Riley had informed trial counsel in advance of trial that he did not wish to bring out at trial his mother's problems. The record also suggests that Gladys Riley, a chronic alcoholic, had been drinking heavily at the time of the trial. These facts, in addition to counsel's concern over Gladys Riley's cross-examination on the alibi defense, *see Riley I*, 496 A.2d at 1002, lead us to conclude that the trial court's finding that counsel's decision not to call defendant's mother was "quite reasonable under the circumstances" and cannot constitute an abuse of discretion. *See Clanton v. Bair*, 619 F.Supp. 1491, 1509 (E.D.Va.1985) (trial counsel not unreasonable in declining to call defendant's mother as a witness at the sentencing phase where defendant did not want mother involved and mother's earlier testimony on cross-examination at state habeas proceeding had revealed defendant's early history of drugs and crime).

■ Trial counsel testified that his concern over Riley's credibility—from the jury's rejection of his alibi defense—influenced his decision not to have Riley testify. The trial court found that trial counsel had a valid concern over defendant's credibility with the jury. The court's conclusion that counsel's decision was reasonable cannot be found to be an abuse of discretion. Trial counsel's conclusion that any potentially mitigating evidence would "cause more harm than good" was not unreasonable. A trial attorney may make a reasonable judgment to omit evidence because it is of "little persuasive value" or because it might have the effect of "opening the door for harmful cross-examination or rebuttal evidence." *Stanley v. Zant*, 697 F.2d 955, 965 (11th Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). Trial counsel's decision cannot be found to be unreasonable in light of the possibility that defendant's arguably "mitigating" testimony could have backfired with a damaging response from the State. *See Mitchell v. Kemp*, 762 F.2d at 890.

### C.

■ We now take up trial counsel's asserted failure to secure a psychiatric evalu-

ation of defendant for the purpose of developing a "social history" of defendant as mitigating evidence. The court carefully examined counsel's conduct in this respect and concluded that trial counsel had no knowledge or reason to believe ["no inkling"] that a mental health evaluation of defendant would be appropriate or helpful. In the absence of such a predicate finding, the court concluded that trial counsel's professional judgment to forego a mental health evaluation of defendant was not ineffective conduct as a matter of law. The record and controlling law supports such a finding. Counsel met with defendant on numerous occasions before trial and prepared for trial with the belief that defendant did not suffer from any mental impairment. On the contrary, counsel appraised defendant as being both contentious and strong willed. Defendant had repeatedly differed with counsel on his pretrial strategy and had expressed his independence by preparing and filing several pretrial *pro se* motions with which counsel disagreed.

In examining trial counsel's conduct in this area, it is necessary to "address not what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638, 657, *reh'g denied*, 483 U.S. 1056, 108 S.Ct. 32, 97 L.Ed.2d 820 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n. 38, 104 S.Ct. 2039, 2050 n. 38, 80 L.Ed.2d 657, 672 n. 38 (1984)). Further, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

We agree with the trial court that it was within defense counsel's professional judgment to forego an investigation into defendant's mental health for the purposes of mitigation. In holding that defense counsel acted reasonably in concluding that a mental health evaluation would not be of assistance, we note with approval the reasoning of the Seventh Circuit:

[A] defense attorney must make decisions over what avenues of defense to pursue. These decisions, in the absence of a clear derogation from professional standards, will be respected. The Sixth Amendment does not require a defense attorney to pursue defenses that are not reasonably suggested by the apparent factual circumstances surrounding the crime charged or the subsequent demeanor and conduct of the client. While one would hope that defense lawyers would routinely reflect upon the mental capabilities of a defendant, in the absence of circumstances that would put a counsel on notice the Constitution cannot be read to mandate a specific inquiry at all times.

*United States ex rel. Rivera v. Franzen*, 794 F.2d 314, 317 (7th Cir.1986), *cert. denied*, 479 U.S. 991, 107 S.Ct. 588, 93 L.Ed.2d 590 (1986). *See also Stevenson v. State*, Del.Supr., 469 A.2d 797, 800 (1983). The trial court's finding that trial counsel had no indication that a psychiatric evaluation would be a worthwhile course of investigation is supported by the record. The defendant has not met his burden of showing that trial counsel's conduct is "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

### D.

Finally, we address defendant's claim that trial counsel's failure to develop defendant's "social history" left defendant with no "coherent" trial strategy and no argument in mitigation. The court found that trial counsel made a deliberate choice to avoid defendant's upbringing and problems as a youth and instead relied on the character witnesses who were known and available. The trial court found reasonable counsel's choice not to emphasize defendant's background and problems as a youth growing up in Philadelphia. The court found it more likely that a Kent County jury would draw "negative inferences" from hearing a story of defendant's development from a neglected child to a "big city hoodlum." The court concluded that any additional discussion of defendant's background may have been detrimental.

We find no abuse of discretion in the trial court's finding that a reasonable basis existed for counsel's declining to present evidence of defendant's background. In *Burger v. Kemp*, 483 U.S. at 776, 107 S.Ct. at 3114, 97 L.Ed.2d at 638, the Supreme Court confronted a similar claim of ineffective assistance of counsel based in part on counsel's failure to develop the defendant's troubled family background as a mitigating factor to a sordid crime. As in this case, counsel chose instead to emphasize a co-indictee's culpability. The Court found defense counsel's acts and omissions to be within the "range of professionally competent assistance":

> [C]ounsel's decision not to mount an all-out investigation into petitioner's background in search of mitigating circumstances was supported by reasonable professional judgment. It appears that he did interview all potential witnesses who had been called to his attention and that there was a reasonable basis for his strategic decision that an explanation of petitioner's history would not have minimized the risk of the death penalty.

*Id.* at 794–795, 107 S.Ct. at 3126, 97 L.Ed.2d at 657.

Here as well, the record supports Superior Court's finding that trial counsel did present mitigating evidence. Counsel argued that Riley's co-defendant was the actual killer, yet he received a less severe penalty as a result of a plea bargain. Trial counsel also presented the testimony of five witnesses that defendant was a hard working, nonviolent person, and that the crime lacked the essentials of premeditation, malice or viciousness warranting the death penalty. The trial court found counsel's conduct at the penalty phase to be constitutionally acceptable. We agree. That other witnesses might have been called or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel. *Cape v. Francis*, 741 F.2d 1287, 1301 (11th Cir.1984), *cert. denied*, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 245 (1985). Since counsel's choices appear to have been dictated by sound considerations, we must presume that counsel's actions were purposeful or strategic, absent evidence to overcome this presumption. *Stanley v. Zant*, 697 F.2d at 970. On the record before us, we find no abuse of discretion in the trial court's conclusion that counsel's acts and omissions were "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

\* \* \*

For the foregoing reasons, we affirm Superior Court's denial of postconviction relief.

## APPENDIX A
## FLAMER INSTRUCTIONS*

THE COURT: Members of the jury, you have now heard all the evidence that is going to be presented during the punishment hearing in this case, and you have heard the arguments of the attorneys for the State and for the defendant. I shall not review the evidence which has been presented because you, the jury, are the sole and exclusive judges of the facts of the case, of the credibility of the witnesses and of the weight and value of their testimony.

I shall now instruct you as to the applicable principles

## APPENDIX B
## RILEY INSTRUCTIONS*

THE COURT: Members of the jury, you have now heard all of the evidence which is going to be presented during the punishment hearing in this case, and you have heard the arguments of the attorneys for the State and for the defendant. I shall not review the evidence which has been presented, because you the jury are the sole and exclusive judges of the facts of the case, of the credibility of the witnesses and of the weight and value of their testimony.

I shall now instruct you as to the applicable principles

of law governing the punishment to be imposed in this case. No single one of these instructions states all of the law applicable to this determination. Therefore, you should listen to and consider all the instructions together. You are to apply the law to these facts and in this way decide the punishment to be imposed in the case.

The criminal code says as follows: "Upon a conviction of guilt of a defendant of first degree murder, the Superior Court shall conduct a separate hearing to determine whether the defendant shall be sentenced to death or to life imprisonment without benefit of probation or parole.

"A sentence of death shall not be imposed until the jury finds:

"(1) Beyond a reasonable doubt at least one statutory aggravating circumstance; and

"(2) Unanimously recommend[s], after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. Where the jury submits such a finding and recommendation, the Court will sentence the defendant to death. A finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death, supported by the evidence, shall be binding on the Court."

The Delaware law specifies certain statutory aggravating circumstances which the State may contend exist in a particular case. The law does not specify mitigating circumstances, but the defense may offer evidence relating to any mitigating circumstances which it contends exist in a particular case. The State may likewise offer matters in

of law governing the punishment to be imposed in this case. No single one of these instructions states all of the law applicable to this determination. Therefore, you must listen to and consider all of these instructions together. You are to apply the law to the facts and in this way decide the punishment to be imposed in the case.

The Criminal Code says as follows: "Upon a conviction of guilt of a defendant of first degree murder, the Superior Court shall conduct a separate hearing to determine whether the defendant should be sentenced to death or to life imprisonment without benefit of probation of [sic] parole.

"A sentence of death shall not be imposed unless the jury finds:

"(1) Beyond a reasonable doubt at least one statutory aggravating circumstance; and

"(2) Unanimously recommends, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. Where the jury submits such a finding and recommendation, the Court shall sentence the defendant to death. A finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death, supported by the evidence, shall be binding on the Court."

The Delaware law specifies certain statutory aggravating circumstances which the State may contend exist in a particular case. The law does not specify mitigating circumstances, but the defense may offer evidence relating to any mitigating circumstances which it contends exist in a particular case. The State may likewise offer matters in

aggravation besides the statutory aggravating circumstances.

An aggravating circumstance is a factor which tends to make the defendant's conduct more serious, or the imposition of a penalty of death appropriate. A mitigating circumstance is any factor which tends to make the defendant's conduct less serious or the imposition of a penalty of death inappropriate.

In this case the State contends that the following four statutory aggravating circumstances exist:

1. The murder was committed while the defendant was engaged in the commission of robbery.

2. The defendant's course of conduct resulted in the deaths of two or more persons where the deaths are a probable consequence of the defendant's conduct.

3. The murders were outrageously or wantonly vile, horrible or inhuman.

4. The murders were committed for pecuniary gain.

You cannot recommend that this defendant be sentenced to death unless you find beyond a reasonable doubt that at least one statutory aggravating circumstance exists.

In this regard an applicable portion of the Delaware law provides that in any case where the defendant has been convicted of murder in

aggravation besides the statutory aggravating circumstances.

An "aggravating circumstance" is a factor which tends to make the defendant's conduct more serious, or imposition of a penalty of death appropriate. A "mitigating circumstance" is any factor which tends to make defendant's conduct less serious, or the imposition of a penalty of death inappropriate.

In this case the defendant is now convicted of two charges of first degree murder, Count I and Count V. However, the State is proceeding in this penalty hearing only as to Count V of the Indictment which pertains to the felony murder of James E. Feeley, Sr., and is not proceeding in this penalty hearing on Count I which pertains to the intentional killing of James E. Feeley, Sr. The State contends that the only statutory aggravating circumstance presented for your consideration is as follows:

"(1) The murder was committed while the defendant was engaged in the commission of the felony of robbery."

You cannot recommend that this defendant be sentenced to death unless you find beyond a reasonable doubt that at least one statutory aggravating circumstance exists.

In this regard, an applicable portion of the Delaware law provides that in any case where the defendant has been convicted of murder in

the first degree in violation of 11 Delaware Code, Section 636(a)(2) that conviction shall establish the existence of a statutory aggravating circumstance.

In this case the defendant has been convicted of violating 11 Delaware Code, Section 636(a)(2) which reads: "Murder in the first degree. A person is guilty of murder in the first degree when in the course of and in furtherance of the commission of a felony, he recklessly causes the death of another person."

Therefore, that statutory aggravating circumstance has been established beyond a reasonable doubt, and you are so instructed.

The law provides that a sentence of death shall not be imposed unless you find beyond a reasonable doubt at least one statutory aggravating circumstance and unanimously recommend, after weighing all relevant evidence in aggravation, including but not limited to the statutory aggravating circumstance or circumstances that you have already found to exist, and mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. You are to weigh any mitigating factors against the aggravating factors to determine the penalty.

If you have a reasonable doubt about the existence of any statutory aggravating circumstance, you must give the defendant the benefit of that reasonable doubt and find that that statutory aggravating circumstance does not exist.

I would remind you a reasonable doubt means a doubt based upon good and sufficient reason and common sense.

the first degree in violation of 11 Delaware Code Section 636(a)(2) that conviction shall establish the existence of a statutory aggravating circumstance.

In this case, the defendant has been convicted of violating 11 Delaware Code Section 636(a)(2) which reads: "Murder in the first degree, a person is guilty of murder in the first degree when: (2) In the course of and in furtherance of the commission of a felony, he recklessly causes the death of another person."

Therefore, that statutory aggravating circumstance has been established beyond a reasonable doubt, and you are so instructed.

The law provides that a sentence of death shall not be imposed unless you find beyond a reasonable doubt at least one statutory aggravating circumstance and unanimously recommend, after weighing all relevant evidence in aggravation, including but not limited to, the statutory aggravating circumstance or circumstances that you have already found to exist, and mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. You are to weigh any mitigating factors against the aggravating factors to determine the penalty.

If you have a reasonable doubt about the existence of any statutory aggravating circumstance, you must give the defendant the benefit of that reasonable doubt and find that that statutory aggravating circumstance does not exist.

I would remind you that "reasonable doubt" means a doubt based upon good and sufficient reason and common sense.

Your unanimous recommendation for the imposition of the death penalty, if supported by the evidence, is binding on the Court. Similarly, if you are not unanimous in your recommendation to impose the death penalty, or you cannot agree unanimously as to your recommendation, then the Court is bound to impose a sentence of life imprisonment without benefit of probation or parole.

In conclusion, a sentence of death shall not be imposed unless you, the jury, find beyond a reasonable doubt at least one statutory aggravating circumstance has been established and unanimously recommend a sentence of death be imposed after weighing all relevant evidence in aggravation and mitigation which bear upon the particular circumstances and details of the commission of the offense and the character and propensities of the offender.

Should you fail to agree unanimously to either of these two factors, the Court shall sentence the defendant to life imprisonment without benefit of probation or parole.

As I have previously instructed, you have found a statutory aggravating circumstance by returning verdicts of guilty of murder in the first degree in violation of 11 Delaware Code, Section 636(a)(2), recklessly causing the death during commission of a felony. You will be given a written interrogatory on which to indicate if you find any additional statutory aggravating circumstance. If you do not unanimously find beyond a reasonable doubt the existence of any additional aggravating circumstance, you should indicate accordingly.

You will next indicate on the written interrogatory that will be given to you whether the jury unanimously recommends

Your unanimous recommendation for the imposition of the death penalty, if supported by the evidence, is binding on the Court. Similarly, if you are not unanimous in your recommendation to impose the death penalty, or if you cannot agree unanimously as to your recommendation, then the Court is bound to impose a sentence of life imprisonment without benefit of probation or parole.

In conclusion, a sentence of death shall not be imposed unless you, the jury, find: (1) Beyond a reasonable doubt at least one statutory aggravating circumstance has been established; and (2) Unanimously recommend that a sentence of death be imposed after weighing all relevant evidence in aggravation and mitigation which bear upon the particular circumstances and details of the commission of the offense and the character and propensities of the offender.

Should you fail to agree unanimously to either of those two matters, the Court shall sentence the defendant to life imprisonment without benefit of probation or parole.

As I have previously instructed, you have found a statutory aggravating circumstance by returning a verdict of guilty of murder first degree, in violation of 11 Delaware Code Section 636(a)(2). You will be given a written interrogatory on which to indicate if you find any additional statutory aggravating circumstance. If you do not unanimously find beyond a reasonable doubt the existence of any additional aggravating circumstance, you should indicate accordingly.

You should next indicate on the written interrogatory that will be given to you whether the jury unanimously

that a death sentence be imposed.

If you recommend the death penalty, you will then indicate on the written interrogatory which statutory aggravating circumstance or circumstances, including the violation of 11 Delaware Code, Section 636(a)(2), you relied upon in reaching your decision.

You will be given a written interrogatory for each of the four counts of murder in the first degree. There will be four interrogatories given to you and you will mark the appropriate place on each of the four interrogatories. There is one interrogatory for each of the four counts or charges for murder in the first degree.

recommends that a death sentence be imposed.

If you recommend the death penalty, you will then indicate on the written interrogatory which statutory aggravating circumstance or circumstances, including the violation of 11 Delaware Code Section 636(a)(2), you relied upon in reaching your decision.

You will be given a written interrogatory for the one count of murder first degree.

This interrogatory will be given to you and taken to the jury room as well as the instructions I have just read to you.

I will read these interrogatories to you now.

Interrogatory to the jury.

Does the jury unanimously find beyond a reasonable doubt that the following statutory aggravating circumstance existed?

One, the murder occurred during the commission of the felony of robbery. Yes, or no. You will check either one or the other here on the sheet.

If your answer to the statutory aggravating circumstance is "No", place a check on the appropriate line, sign this form on the lines provided below and notify the bailiff that you are ready to return to the courtroom where this form will be presented to the Judge by the foreman.

If your answer to the statutory aggravating circumstance is "Yes", place a check on the appropriate line below. Answer the following question and sign the form on the lines provided below and notify the bailiff that you are ready to return to the courtroom where this form will be presented to the Judge by the foreman.

One, does the jury unanimously recommend that a sentence of death be imposed? Yes or no.

Whatever your decision will be, you will all have on the second sheet Foreman, Juror No. 2, Juror No. 3, Juror No. 4, Juror No. 5, Juror No. 6, Juror No. 7, Juror No. 8, Juror No. 9, Juror No. 10, Juror No. 11 and Juror No. 12. All of you will sign it.

With that I will ask you to retire for its deliberations and you will have with you the instructions and interrogatories which I have read to you.