# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. ID No. 1602015453A&B |
| | ) | |
| RONALD JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 13, 2020
Decided: June 22, 2020

## COMMISSIONER'S [REDACTED][1] REPORT AND RECOMMENDATION THAT DEFENDANT'S AMENDED MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING SHOULD BE DENIED

Nichole W. Warner, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Associates, P.A., counsel for Defendant.

**MAYER,** Commissioner

---

[1] The Court entered an Order approving Defendant's request to seal certain confidential information, *See* D.I. # 81.

1

This 22nd day of June, 2020, upon consideration of Defendant's Amended Motion for Postconviction Relief (the "Motion"), I hereby recommend as follows:

## BACKGROUND

On February 13, 2016, Ronald Jackson ("Defendant") was at the apartment of Tyrone Roberts ("Roberts"), and the two had a dispute. Roberts called 911 and reported that Defendant threatened to kill him and fired a gun at him inside the apartment. Defendant does not dispute that he was at the apartment, but claimed the apartment already had a bullet hole in a window, a shot occurred outside, Roberts was high on PCP and accused Defendant of trying to kill him. Around this same time, officers wearing body cameras were on patrol nearby and heard a shot. They saw Defendant in the area and gave chase. Defendant ran back toward the apartment where he was eventually apprehended on the exterior stairway. While pursuing Defendant, the officers observed Defendant throw something that appeared to be a gun and they later recovered a handgun in that area. Defendant testified that he was not the man they saw running. The State did not recover fingerprints, DNA or gunshot residue from the gun. They also did not recover discharged bullets or spent shell casings in the apartment.

Defendant was charged with Possession of a Firearm by a Person Prohibited (PFBPP), Possession of Ammunition by a Person Prohibited (PABPP), Carrying a Concealed Deadly Weapon (CCDW), Receiving a Stolen Firearm, Aggravated

2

Menacing, Possession of a Firearm During the Commission of a Felony (PFDCF) (2 counts), Reckless Endangering First Degree, Offensive Touching, Criminal Mischief, Resisting Arrest and Criminal Impersonation.

The Court granted a motion to sever the PFBPP and PABPP charges and the remaining case proceeded to a jury trial on November 15, 2016.[2] The jury found Defendant guilty of all remaining charges. After a bench trial, the Court found Defendant guilty of the "person prohibited" charges. On February 17, 2017, the Court granted the State's Motion to Declare Defendant an Habitual Offender and he was sentenced to a total of 60 years at Level V, suspended after 35 years. Defendant appealed and the Supreme Court affirmed his conviction.[3]

On October 19, 2018, Defendant filed a *pro se* Motion for Postconviction Relief.[4] The Court appointed counsel to represent Defendant and post-conviction counsel filed an Amended Motion for Postconviction Relief (the "Motion").[5] In summary, the Motion presents the following ineffective assistance of counsel claims: (1) Trial Counsel failed to properly investigate the scene; (2) Trial Counsel failed to effectively discredit the victim's testimony; (3) Trial Counsel failed to

---

[2] The State entered a *nolle prosequi* on the Receiving Stolen Firearm charge and the Court dismissed the Offensive Touching charge.

[3] *Jackson v. State*, 2018 WL 936845 (Del. Feb. 16, 2018) (hereinafter "*Jackson I*").

[4] D.I. # 32.

[5] D.I. #s 45, 54.

3

effectively challenge the ShotSpotter evidence; and (4) the cumulative errors justify relief. Trial Counsel filed an Affidavit in response,[6] the State filed a Response in opposition,[7] and Defendant filed a Reply.[8] Briefing is now complete and for the reasons set forth below, I recommend that the Court deny the Motion.

## Defendant's Motion for Postconviction Relief

The Court must first determine whether there are any procedural bars to the motion before considering the merits of the claims.[9] This is Defendant's first timely filed motion under Superior Court Criminal Rule 61.[10] The other procedural bars likewise do not apply because ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[11] The fact that counsel did not raise an argument or objection during the trial, or on appeal, does not bar a defendant from alleging

---

[6] D.I. # 55.

[7] D.I. # 60.

[8] D.I. # 63.

[9] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[10] Defendant's first motion, having been filed within one year of the Supreme Court's Mandate on direct appeal, is timely. Super. Ct. Crim. R. 61(m)(2) and Super. Ct. Crim. R. 61(i)(1).

[11] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

4

that counsel's failure amounted to ineffective assistance.[12] Defendant's Motion is not procedurally barred.

## I. Trial Counsel's Investigation was Reasonable

Defendant first argues that if Trial Counsel had properly investigated the scene, she would have realized that the State's theory of the case was not plausible. Through Post-Conviction Counsel, Defendant hired an investigator.[13] Defendant now argues that: (1) it was not possible for him to have fired the gun inside the apartment, fled down the alley and then returned back to the apartment building in the time that elapsed between the shot and apprehension; and (2) the sound of the shot reflected on the body cameras was consistent with a shot that was fired outside, rather than inside an apartment.

Trial Counsel attests that:

> In representing Defendant, Trial Counsel thoroughly reviewed all documents and discovery provided by the State, including Body Worn Camera video, ShotSpotter evidence, photographs, statements, surveillance video and police reports. Trial Counsel challenged the State's evidence during trial, including cross-examining the officers on what they heard, details on who was seen running, where the defendant was seen and taken into

---

[12] *See Malloy v. State*, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011); *Brodie v. State*, 2011 WL 927673, at *1 (Del. Super. Mar. 17, 2011); *State v. Ross*, 2004 WL 2735515, at *2 (Del. Super. Nov. 22, 2004).

[13] Defendant retained the services of Investigator William Browne, a former Captain with the Wilmington Police Department ("Browne").

custody, where the gun was recovered, how much time had elapsed between when the individual was running and when Defendant was seen on the stairway, among other things. Upon Trial Counsel's recollection of the evidence and trial strategy, Trial Counsel did not believe that there was a need to further investigate the crime scene in order to present an effective strategy at trial.[14]

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's representation fell below an objective standard of reasonableness **and** the deficiencies in counsel's representation caused the defendant actual prejudice.[15] When reviewing such a claim, the Court must analyze counsel's conduct based upon all of the facts of the case and avoid peering through the lens of hindsight.[16] Defendant must also show that any alleged errors were so serious that his counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.[17] "A defense attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[18] Great weight and deference are given to tactical decisions

---

[14] Affidavit at ¶ 5.

[15] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[16] *State v. Wright*, 653 A.2d 288, 295 (Del. Super. 1994).

[17] *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super. May 23, 2012).

[18] *Id.*, at *4 (holding defense counsel provided active and capable advocacy when evidence against Defendant was overwhelming) (citing *Harrington v. Richter*, 131 S. Ct. 770, 787-792 (2011)).

made by the trial attorney.[19] If a defendant can establish error by counsel, he must also show that but for the errors, there is a reasonable probability that the outcome of the proceedings would have been different.[20] In doing so, Defendant must overcome a strong presumption that counsel's conduct was reasonably professional under the circumstances.[21] "Rule 61 is intended to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[22]

With respect to Defendant's first claim, trial counsel has a general duty to investigate, not a duty to investigate all potentially helpful evidence.[23] The Court will defer to trial counsel's strategic choices as long as counsel conducted a fair investigation of the applicable law and facts.[24] Importantly, the United States Supreme Court has strongly cautioned that the courts must avoid the "distorting

---

[19] *State v. Miller*, 2013 WL 871320, at *4 (Del. Super. Feb. 26, 2013).

[20] *Strickland*, 466 U.S. at 687-88, 694; *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[21] *State v. Wright*, 653 A.2d at 293-94 (citations omitted).

[22] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

[23] *Alston v. State*, 2015 WL 5297709, at *2-3 (Del. Sept. 4, 2015) (trial counsel's investigation based upon review of police reports and eyewitness testimony was adequate).

[24] *Purnell v. State*, 106 A.3d 337, 342 (Del. 2014), quoting *Hoskins v. State*, 2014 WL 4722716, at *3 (Del. Sept. 22, 2014); *Gattis v. State*, 697 A.2d 1174, 1184 (Del. 1997), citing *Riley v. State*, 585 A.2d 719, 727 (Del. 1990) (quoting *Crisp v. Duckworth*, 7th Cir., 743 F.2d 580, 583 (1984) ("Effective representation by counsel depends upon 'adequate investigation and pre-trial preparation.'").

effects of hindsight" or grading counsel's performance.[25] Otherwise, a defendant could too easily challenge a particular strategic choice simply because the effort failed to garner the relief sought.[26] Further, there are "countless" ways by which counsel may defend a client, and no two advocates may necessarily see the case the same way. As such, defense counsel has "wide latitude in making tactical decisions" and enjoys a strong presumption that his/her conduct was the result of sound trial strategy.[27] "Effective representation does not require that the Defendant prevail nor that his counsel doesn't make mistakes."[28] The Court must review all of the circumstances, and after applying a heavy measure of deference to counsel's judgments, determine whether the decisions made were reasonable.[29]

In the present case, although Defendant's investigator presents an alternative version of the events, he did not unearth any missed available evidence that would have assisted the defense at the time of trial. Rather, the investigator based his

---

[25] *Ploof v. State*, 75 A.3d 811, 821-825, citing *Strickland,* at 689-690, 687.

[26] *State v. Fletcher*, 2015 WL 2438271, at *5 (Del. Super. May 19, 2015); *State v. Gattis*, 2011 WL 1458484, at *9 (Del. Super. Mar. 22, 2011) (the court must avoid judging effectiveness of trial strategy simply because the theory advanced was unsuccessful). *See also, State v. Wright*, 1998 WL 734771, at *8 (Del. Super. Sept. 28, 1998) (finding that although trial counsel's strategy was risky, it was not unreasonable nor ineffective).

[27] *State v. Fletcher*, 2015 WL 2438271, at *5, citing *Harrington v. Richter*, 131 S.Ct. 770, 788–789 (2011).

[28] *State v. MacDonald*, 2007 WL 1378332, at *8 (Del. Super. May 21, 2007).

[29] *Strickland*, at 691.

analysis on the officers' testimony at trial that it was 1-2 minutes between hearing the shot and seeing Defendant on the top floor of the apartment.[30]  Defendant now seeks to do what *Strickland* specifically forbids – an attack on Trial Counsel's performance with the benefit of hindsight.  The test is not what Trial Counsel should have done had she had the benefit of the full trial record *before* trial, but rather what was objectively reasonable at the time of trial.

Defendant admitted he was at the apartment, and the officers saw Defendant in the area.  On appeal, the Supreme Court enumerated six categories of evidence from the trial and explained that this was "not a close case."[31]  Trial Counsel zealously attacked the State's evidence by challenging whether Defendant was the person seen running in the alley, whether the gunshot occurred inside or outside the apartment, and the absence of ballistic evidence.  To grant relief simply because the investigator now proffers another point of view, having the benefit of the trial record, would vitiate the heavy deference given to counsel at the time of counsel's conduct.[32]  For these reasons, Trial Counsel's strategy was not deficient.

---

[30] *See* A640 at ¶ 8.

[31] *Jackson I*, at *6.

[32] *See Strickland*, at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

## II. SEALED BY ORDER OF THE COURT D.I. # 81

## III.   Trial Counsel Erred When Responding to the Hearsay Objection

Defendant next argues that Trial Counsel did not effectively manage a hearsay objection. Defendant intended to testify that Roberts was high on PCP, erratic, and screaming "Yo, why are you trying to kill me? Why are you trying to kill me." The State objected on the basis that the proposed testimony included inadmissible hearsay. Through her Affidavit, Trial Counsel concedes that she should have voiced the "excited utterance" or "present sense impression" exceptions to the hearsay bar to admit the testimony.[33] Defendant now claims that if he testified regarding Roberts' statements, then the jury would have been more likely to believe Defendant's version of events, including that he was inside the apartment when a shot was fired outside.

Defendant's argument is mere conjecture. First, the statement does not confirm that the shot occurred outside the apartment. Second, the statement could have easily convinced a jury that Defendant fired the gun at Roberts attempting to kill him. Third, Defendant was able to testify that he believed Roberts was high on PCP and that Roberts accused Defendant of trying to kill him. There is no reasonable

---

[33] *See* D.R.E. 803(1) – (3).

13

basis to believe that if this statement was presented to the jury that it would have convinced the jury of Defendant's innocence. Although Trial Counsel erred in failing to identify the proper hearsay objection, Defendant has not established a reasonable probability that if the error had not occurred, that the outcome of the case would have been different.

## IV.    Defendant's ShotSpotter Theory is Insufficient to Grant Relief

Defendant argues that Trial Counsel failed to effectively challenge the ShotSpotter evidence. This issue, although re-framed an ineffective assistance of counsel claim, was addressed by the Supreme Court. On appeal, Defendant argued that his rights were violated because the State failed to call the preparer of the ShotSpotter report at trial. The Supreme Court denied the claim citing Trial Counsel's strategic decision to elicit testimony that the report did not show whether the shot was fired inside or outside the building. Despite this, Defendant urges the Court to find that Trial Counsel's tactical decision was ineffective because she did not cross-examine the State's witness with the fact that ShotSpotter detects up to 80% of "outdoor" shots and questioning about its inability to detect shots fired inside would have significantly furthered the defense.

Defendant reads a singular line within the ShotSpotter Report to mean ShotSpotter detects "only" outdoor gunshots. However, that line indicates that

14

ShotSpotter detects 80% "of" outdoor incidents.[34] The preparer of the report was not a witness at trial and according to the State, it would have demonstrated that ShotSpotter is not limited to detection of outdoor gunshots. Defendant has not convincingly demonstrated that the report excludes the detection of indoor gunshots or that his new strategy would have changed the outcome of the proceedings. In fact, on appeal, the Supreme Court stated, "[a]s to Jackson's argument that a page of the ShotSpotter report not admitted into evidence at trial clearly shows the gunshot occurred outside of 201 North Madison Street, the document does not support this argument."[35] Trial Counsel pointed out through cross-examination that ShotSpotter could not identify whether the shot was fired from within or outside a building, nor the apartment or room where the shot may have occurred. The evidence at trial concluded that the shot occurred in the area of the apartment but did not confirm whether the shot was fired inside or outside. Without any definitive means to attack ShotSpotter's findings at trial further, Trial Counsel's strategy was objectively reasonable.

Finally, Defendant argues that the cumulative effect of the multiple errors by Trial Counsel prejudiced him and justify a new trial. However, as noted above, the

---

[34] *See* A642.

[35] *Jackson I,* at *6.

15

only error by Trial Counsel was the failure to raise a proper exception to the hearsay objection. As that error did not result in prejudice to Defendant, his corresponding argument of cumulative errors does not merit relief.

### Defendant's Motion for Evidentiary Hearing

Pursuant to Superior Court Criminal Rule 61(h), if it appears that an evidentiary hearing is not desirable, the judge should dispose of the motion. I have found no justification for an evidentiary hearing in this matter and the request should be denied.

For all of the foregoing reasons, Defendant's Amended Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

Commissioner Katharine L. Mayer

cc:    Prothonotary
        Nichole Warner, Esquire
        Natalie Woloshin, Esquire