# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
)
)
v. ) ID. No. 1312014951
)
)
JEROME MADISON )

Submitted: January 11, 2018
Decided: April 11, 2018

## MEMORANDUM OPINION AND ORDER

*Upon Defendant, Jerome Madison's, Amended Motion for Postconviction Relief,*
**DENIED**.

Karin M. Volker, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Christopher S. Koyste, Esquire, Law Office of Christopher S. Koyste, LLC, Bellefonte, Delaware, for Defendant Jerome Madison.

**WALLACE, J.**

## I.  INTRODUCTION

Before the Court is Defendant Jerome Madison's ("Madison") Amended Motion for Postconviction Relief.  Madison, who was sentenced to an aggregate mandatory period of incarceration of forty-two years, asks the Court to set aside his convictions for: Rape First Degree; Attempted Rape First Degree; Unlawful Sexual Contact First Degree; Home Invasion; Possession of a Deadly Weapon During the Commission of a Felony; Assault Second Degree; Assault Third Degree; Kidnapping First Degree (two counts); and Terroristic Threatening (two counts). For the reasons stated below, Madison's motion is **DENIED**.

## II.  FACTUAL[1] AND PROCEDURAL BACKGROUND

In December 2013, Madison was arrested by New Castle County police and gave a post-*Miranda* statement confessing to entering the victim's house and assaulting the victim and the victim's companion.  Madison was charged by indictment with: three counts of Rape First Degree, one count of Home Invasion, one count of Possession of a Deadly Weapon During the Commission of a Felony,

---

[1]     The factual outline of Madison's crimes is set forth in the Delaware Supreme Court's direct appeal affirmance. *See Madison v. State*, 2016 WL 363734, at *1 (Del. Jan. 28, 2016), reargument denied (Feb. 29, 2016), as corrected (Feb. 29, 2016).  Here the Court recounts only the factual background of the prior proceedings necessary to resolve Madison's postconviction claims.

two counts of Kidnapping First Degree, two counts of Assault Second Degree, and two counts of Terroristic Threatening.[2]

Madison's privately-retained trial counsel, James A. Natalie, Jr., Esquire, filed five pre-trial applications: a motion to withdraw as counsel;[3] a motion for full psychiatric evaluation;[4] a motion for the reduction of bail;[5] a motion to suppress;[6] and a notice of a mental illness defense.[7] The Court denied each motion and set trial for September 2014.[8] Madison waived his right to a jury trial, and a two-day bench trial was held.[9] At trial, witnesses included the victims, A.T. and E.C., and several

---

[2] Indictment, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Jan. 21, 2014) (D.I. 2).

[3] Mot. to Withdraw as Counsel, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. June 24, 2014) (D.I. 23).

[4] Mot. for Full Psychiatric Evaluation, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. June 24, 2014) (D.I. 25).

[5] Mot. for Reduction of Bail, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. June 24, 2014) (D.I. 26).

[6] Mot. to Suppress, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. June 24, 2014) (D.I. 27).

[7] Notice of Defense of Mental Illness, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. June 24, 2014) (D.I. 24).

[8] Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. June 27, 2014) (D.I. 29); Scheduling Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Jul. 16, 2014) (D.I. 32).

[9] Stipulation of Waiver of Jury Trial, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Sept. 23, 2014) (D.I. 41).

police officers. Certain evidence that may have yielded DNA evidence had been collected from the crime scene, but was neither tested nor presented at trial.[10]

The Court delivered a verdict of guilty on: one count each of Rape First Degree, Attempted Rape First Degree, Unlawful Sexual Contact First Degree, Home Invasion, Possession of a Deadly Weapon During the Commission of a Felony, Assault Second Degree, and Assault Third Degree; and two counts each of Kidnapping First Degree and Terroristic Threatening.[11]

Mr. Natalie then filed a second motion to withdraw, which the Court again denied.[12] Madison subsequently filed: a *pro se* motion to remove Mr. Natalie and appoint new counsel; a *pro se* motion for recusal of the trial judge; a *pro se* motion to invoke Rule 47 and participate with defense counsel; and, a *pro se* motion to vacate judgment and for entry of a judgment of acquittal. Each of Madison's *pro se* motions was denied.[13]

---

[10]    *See Madison*, 2016 WL 363734, at *3.

[11]    Verdict, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Oct. 1, 2014) (D.I. 42).

[12]    Second Mot. to Withdraw, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. October 21, 2014) (D.I. 45).

[13]    *See State v. Madison*, 2015 WL 1119540 (Del. Super. Ct. Mar. 10, 2015).

Madison was sentenced to an aggregate incarceration period of sixty years, suspended after forty-two years.[14] Madison appealed his sentence to the Delaware Supreme Court.[15] Madison's request to proceed *pro se* on direct appeal was remanded to this Court for an evidentiary hearing.[16] At the hearing, the Court found that Madison had knowingly and voluntarily waived his right to counsel on appeal.[17] Before the appeal was heard, Madison filed four *pro se* motions in this Court: three motions to compel and a motion for the appointment of counsel. Each motion was denied without prejudice.[18]

On direct appeal, the Supreme Court affirmed this Court's verdict, sentence and denial of post-trial relief.[19]

---

[14] Sentencing Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Mar. 13, 2015) (D.I. 57).

[15] Notice of Appeal, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Mar. 27, 2015) (D.I. 58).

[16] Findings of Fact and Conclusion of Law, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. June 11, 2015) (D.I. 70).

[17] *Id.*

[18] *See* Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Jul. 22, 2015) (D.I. 75); Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Feb. 17, 2016) (D.I. 79); Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Feb. 17, 2016) (D.I. 80); Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Feb. 23, 2016) (D.I. 82).

[19] *Madison v. State*, 2016 WL 363734, at *4 (Del. Jan. 28, 2016), reargument denied (Feb. 29, 2016), as corrected (Feb. 29, 2016).

Madison filed *pro se* motions for postconviction relief and for the appointment of counsel. His motion for the appointment of counsel was granted.[20] An amended motion for postconviction relief was filed by new counsel.[21] Mr. Natalie filed an affidavit at the Court's order.[22] And the State thereafter filed its response to the amended motion.[23] Madison, through counsel, replied[24] but later filed a motion for leave to supplement the amended postconviction motion. That motion to supplement was granted by this Court.[25] Mr. Natalie filed a supplementary letter to Madison's

---

[20] Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Mar. 30, 2016) (D.I. 87).

[21] Am. Mot. for Postconviction Relief, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Jan. 23, 2017) (D.I. 101) (hereinafter "Def.'s Mot."). Madison filed supplemental postconviction claims *pro se* on the same date, which this Court denied on January 25, 2017. Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Jan. 25, 2017) (D.I. 106).

[22] Aff. of Trial Counsel Resp. to Am. Mot. for Postconviction Relief, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Mar. 22, 2017) (D.I. 109).

[23] State's Resp. to Def.'s Mot. for Postconviction Relief, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Apr. 5, 2017) (D.I. 110) (hereinafter "State's Resp.").

[24] Def.'s Reply to State's Resp. to Def.'s Am. Mot. for Postconviction Relief, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Oct. 13, 2017) (D.I. 126) (hereinafter "Def.'s Reply").

[25] Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. May 30, 2017) (D.I. 119).

supplemental amended postconviction motion.[26]  And the State filed a response to the supplemental claims.[27]

## III.  DISCUSSION

### A.  MADISON'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE NOT PROCEDURALLY BARRED, BUT MADISON'S CLAIM OF A *BRADY* VIOLATION IS BARRED.

Superior Court Criminal Rule 61(i)(3) provides that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred[.]"[28]  But the Delaware Supreme Court and this Court have consistently held the 61(i)(3) bar inapplicable to an inmate's "claims [of] ineffective assistance of counsel, which could not have been raised in any direct appeal."[29]  Because Madison's motion is timely filed and raises ineffective assistance of counsel claims that could not have been raised during his trial or on direct appeal, certain of his motion's claims are not procedurally barred by this Court's Rule 61(i)(3).

---

[26]    Letter in Resp. to Def.'s Suppl. Am. Mot. for Postconviction Relief, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Aug. 18, 2017) (D.I. 121).

[27]    State's Resp. to Def.'s Suppl. Am. Mot. for Postconviction Relief, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Oct. 12, 2017) (D.I. 125) (hereinafter "State's Suppl. Resp.").

[28]    SUPER. CT. CRIM. R. 61(i)(3).

[29]    *See, e.g., State v. Smith*, 2017 WL 2930930, at *1 (Del. Super. Ct. July 7, 2017).

Superior Court Criminal Rule 61(i)(4) acts to bar claims previously raised on direct appeal. Under Rule 61(i)(4), a motion for postconviction relief is barred if "[a]ny ground for relief [ ] was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding."[30] "Neither federal nor state courts are required to relitigate in postconviction proceedings those claims which have been previously resolved."[31] Madison's first claim—his "Brady" claim—adjudicated on direct appeal to the Delaware Supreme Court, falls under Rule 61(i)(4).

### 1. *Madison's Claim of a* Brady *Violation is Procedurally Barred*

Madison raises one non-ineffective assistance of counsel claim in his Amended Motion: that the State violated *Brady v. Maryland* by failing to timely disclose a detective's report. The State contends that Rule 61(i)(4) procedurally bars this claim because it was formerly adjudicated on direct appeal.[32] Madison counters that the claim adjudicated on direct appeal was a discovery, or *Jencks*, violation, distinct from the *Brady* violation he asserts here.[33]

---

[30] SUPER. CT. CRIM. R. 61(i)(4).

[31] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[32] State's Resp. at 5–6.

[33] Def.'s Reply at 1.

-8-

During his appeal to the Delaware Supreme Court, Madison raised the issue of the late disclosure of one detective's report, arguing that it was a violation of Superior Court Criminal Procedure Rule 26.2.[34] Specifically, Madison argued on appeal that "The State[']s violation of [Superior Court Criminal Rule 26.2] deprive[d] and infringed Madison['s] defense attorney to [sic] efficiently and effectively cross examine all three of the State's witnesses."[35] Madison now argues that the State "committed a *Brady* violation by failing to timely disclose crucial impeachment information to the defense, thereby impeding trial counsel's ability to effectively cross-examine multiple state witnesses[.]"[36]

On appeal, the Supreme Court considered whether Madison's "constitutional right to confront witnesses" had been violated by the State's failure "to produce statements of the victims and a typed report of [the detective]," and found no plain error.[37]

---

[34] *Madison*, 2016 WL 363734, at *3. Rule 26.2 codifies the United State Supreme Court's ruling in *Jencks v. United States* and "requires the State, upon request, to produce statements of a witness to the defense prior to the cross-examination of that witness." *State v. Fowler*, 2017 WL 4381384, at *4 (Del. Super. Ct. Sept. 29, 2017).

[35] *See also* Appellant's Op. Br., *Madison v. State*, 2016 WL 363734, at ¶ 4 (Del. Aug. 13, 2015).

[36] Def.'s Mot. at 9. *Brady* requires the State to turn over all evidence favorable to the accused where the evidence would create "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Starling v. State*, 882 A.2d 747, 756 (Del. 2005).

[37] *Madison*, 2016 WL 363734, at *3.

"Justice does not require that an issue that has been previously considered and rejected be revisited *simply because the claim is refined or restated.*"[38] As the Supreme Court already addressed Madison's arguments concerning the State's production of State witness statements and the detective's typed report, Madison's claim that his *Jencks* violation claim and *Brady* violation claim are distinct is unavailing.

The Delaware Supreme Court, in *Riley v. State*, found that in assessing the claims raised in Riley's motion, "the issues underlying the three remaining claims were carefully addressed in [the earlier case]; and we conclude that the interests of justice would not be served by any further consideration of them."[39]

Similarly, when addressing close but not identical claims brought by the petitioner in *Skinner v. State*, the Delaware Supreme Court stated "[a]lthough this Court has not previously addressed Skinner's ineffectiveness of counsel claim, *per se*, our disposition of Skinner's challenge to the absence of a specific jury instruction on the issue of 'restraint' in his direct appeal was, in fact, a substantive resolution of Skinner's present ineffectiveness of counsel claim."[40] The Court noted that Skinner's claim of ineffective assistance of counsel was merely a "refinement of the

[38]  *Riley v. State*, 585 A.2d 719, 721 (Del. 1990) (emphasis added).

[39]  *Id.*

[40]  *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992).

-10-

jury instruction issue . . . which was rejected by this Court in Skinner's direct appeal."[41] The Court, relying on *Riley*, held that "a defendant is not entitled to have a court re-examine an issue that has been previously resolved 'simply because the claim is refined or restated.'"[42] And the Court ultimately denied Skinner's ineffective assistance of counsel claim as procedurally barred.[43]

Several of this Court's cases align with *Skinner*. In *State v. Smith*, this Court denied Smith's claim as a merely reworded version of a previously addressed and denied claim.[44] "The Court [ ] notes that although you have couched your ineffective assistance of counsel claim in slightly different terms from your second postconviction motion, '[j]ustice does not require that an issue that has been previously considered and rejected be revisited simply because the claim is refined or restated.'"[45] Later, in *Garvey v. State*, this Court denied Garvey's claim for the same reasons cited in *Skinner* and *Smith*.[46] The Court noted that it "disagree[d] with Garvey's contention that his current claim is sufficiently distinguishable from that

---

[41]    *Skinner*, 607 A.2d at 1172.

[42]    *Id.*

[43]    *Id.* at 1173.

[44]    *State v. Smith*, 1994 WL 713969, at *2 (Del. Super. Ct. Nov. 15, 1994), aff'd, 751 A.2d 878 (Del. 2000).

[45]    *Id.* (citing *Riley*, 585 A.2d at 721).

[46]    *Garvey v. State*, 2009 WL 2882873, at *1 (Del. Sept. 10, 2009).

-11-

previous claim to warrant consideration in this proceeding."[47]  Instead, the Court found that he had "merely recast his previously-rejected claim as an attack on his indictment."[48]  Thus, the Court denied his claim as procedurally barred.[49]

Under *Skinner*, *Smith*, and *Garvey*, there is no requirement that the two claims at issue must be identical in order for the Rule 61(i)(4) procedural bar to apply. Instead, the relevant determination is whether the underlying issues of the claims have already been decided.

And here, the substance of Madison's *Brady* violation claim was decided on direct appeal.  In his appeal, Madison claimed the State violated his constitutional right to confront witnesses by failing to provide him with out-of-court statements made by state witnesses and a detective's typed report in violation of Criminal Rule 26.2, a *Jencks* violation.  In his present Motion, Madison claims that his trial counsel was hampered—and therefore his fair trial rights violated—because the State failed to timely disclose to the defense impeachment information in the form of State witness statements and/or a detective's typed report.  He now labels this a *Brady* violation.  Similar to *Skinner*, *Smith*, and *Garvey*, the fact that Madison has used

---

[47]  *Garvey*, 2009 WL 2882873, at *1.

[48]  *Id.*

[49]  *Id.*

-12-

different vocabulary and a different name for his claim is not determinative of whether his claim is procedurally barred.

It is not clear how Madison's two claims are distinct beyond the phrasing used by Madison. Nor does Madison allege anything in his *Brady* argument that was not previously addressed by the Delaware Supreme Court via the discovery/*Jencks* claim on direct appeal. Instead, the Supreme Court's previous determination that there was no error as to the supposed delayed production of certain documents is equally applicable to his *Brady* violation claim. Because this issue has already been addressed on direct appeal, Madison's *Brady* violation claim is **DENIED** as procedurally barred under Rule 61(i)(4).[50]

## B. MADISON FAILS TO ESTABLISH A CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL.

On a claim of ineffective assistance of counsel, the Court reviews the claim under the requirements prescribed by *Strickland v. Washington*.[51] Under *Strickland*, an inmate is required to show: (1) "counsel's performance was deficient, meaning that counsel's representation fell below an objective standard of reasonableness" and

---

[50] And even if it were not, the trial record reflects that the Court, as fact finder here, was well aware of the alleged impeachment evidence that the detective's report represented. *See, e.g.*, App. to Def.'s Mot. A163–65, A181, A186–87. *See also Madison*, 2016 WL 363734, at *4. As that fact finder, the Court notes that there is no reasonable probability that earlier disclosure would have led to a different result in Madison's trial proceeding. *See Starling*, 882 A.2d at 756 (*Brady* claimant must "show how the withheld evidence materially affected the verdict.").

[51] 466 U.S. 668 (1984).

-13-

(2) "if counsel is shown to be deficient, then the defendant must demonstrate prejudice from counsel's error."[52] Delaware applies the *Strickland* test for review of ineffective assistance of counsel claims.[53] First, "the defendant must show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[54] Then, the defendant must "plead allegations of [ ] prejudice with particularity."[55] "Prejudice is defined as 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[56] Failure to make one or the other showing under the *Strickland* test "will render the claim unsuccessful."[57]

### 1. Madison Fails to Show that Trial Counsel's Failure to Cross-Examine Witnesses on Inconsistent Statements was Constitutionally Deficient

Madison alleges two separate claims of ineffective assistance of counsel: first, that Madison's trial counsel was ineffective in failing to cross-examine several witnesses on inconsistent statements contained in a detective's report; and second,

---

[52] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014).

[53] *See, e.g., Hoskins*, 102 A.3d 724; *State v. Hamby*, 2005 WL 914462, at *1 (Del. Super. Ct. Mar. 14, 2005); *State v. Flowers*, 150 A.3d 276 (Del. 2016); *State v. Ellerbe*, 2016 WL 4119863 (Del. Super. Ct. Aug. 2, 2016); *Flamer v. State*, 585 A.2d 736 (Del. 1990).

[54] *Hoskins*, 102 A.3d at 730 (quoting *Strickland*, 466 U.S. at 687).

[55] *Ellerbe*, 2016 WL 4119863, at *3.

[56] *Hoskins*, 102 A.3d at 730 (quoting *Strickland*, 466 U.S. at 687).

[57] *Hamby*, 2005 WL 914462, at *2.

that his trial counsel was ineffective in failing to cross-examine the complaining witness, E.C., on prior inconsistent statements. Both ineffective assistance of counsel claims must fail because Madison fails to satisfy either prong of *Strickland*.

There is a strong presumption that a trial counsel's representation was reasonable and "'it is not this Court's function to second-guess reasonable trial tactics.'"[58] In evaluating an attorney's performance, a reviewing court should "'eliminate the distorting effects of hindsight,' 'reconstruct the circumstances of counsel's challenged conduct,' and 'evaluate the conduct from counsel's perspective at the time.'"[59] "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is 'virtually unchallengeable.'"[60]

In *Ragland v. State*, the defendant raised a claim of ineffective assistance of counsel on the ground that his trial counsel's cross-examination of two witnesses was ineffective.[61] The Delaware Supreme Court noted that in the trial counsel's affidavit, she stated that it was a strategic decision not to question the witness in the

---

[58]   *Ellerbe*, 2016 WL 4119863, at *3 (quoting *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002)). *See also Flamer*, 585 A.2d at 753–54.

[59]   *Flowers*, 150 A.3d at 282 (quoting *Strickland*, 466 U.S. at 687–88).

[60]   *Hoskins*, 102 A.3d at 730 (quoting *Ploof v. State*, 75 A.3d 840, 852 (Del. 2013)).

[61]   *Ragland v. State*, 2009 WL 2509132, at *2 (Del. 2009).

manner suggested by Ragland because it "would have inculpated Ragland and was detrimental to his defense."[62] The Court stated: "[s]trategic decisions by counsel are entitled to a 'strong presumption' of professional reasonableness."[63] The Court ruled that trial counsel's strategic decision was objectively reasonable and, therefore, Ragland's claim failed.[64] Similarly, in *State v. Ellerbe*, this Court found trial counsel's choice not to cross-examine a witness on possible impeachment evidence "objectively reasonable."[65] The Court stated: "[a]n attorney's decision as to how to cross-examine a witness is a tactical decision which deserves great weight and deference."[66] The Court held that the attorney's decision was based on a reasonable conclusion that to cross-examine the witness, as Ellerbe's postconviction counsel urged, would have been of little value to the defense.[67] Further, the Court noted that Ellerbe failed to show that the possible testimony would have likely resulted in a different outcome at trial.[68]

---

[62]     *Ragland*, 2009 WL 2509132, at *2.

[63]     *Id.*

[64]     *Id.*

[65]     *Ellerbe*, 2016 WL 4119863, at *3.

[66]     *Id.*

[67]     *Id.*

[68]     *Id.* at *3–4.

Here, too, Madison establishes neither that trial counsel's performance was deficient because it fell below an objective standard of reasonableness nor that he was prejudiced by trial counsel's performance.

Madison alleges that Mr. Natalie was ineffective in failing to cross-examine certain witnesses regarding inconsistencies in a detective's report and in their prior statements. Madison claims that this impeachment evidence was necessary for the Court to resolve alleged conflicts in testimony and properly reach its verdict. He says the purported evidence served his defense by discrediting the complaining witnesses' testimony. He alleges that the supposed failure to raise these inconsistencies at trial therefore prejudiced him. According to Madison, they were essential to his reasonable doubt strategy. But in *Ellerbe*, this Court held that "[a]n attorney's decision as to how to cross-examine a witness is a tactical decision which deserves great weight and deference."[69] And, under Delaware case law, Mr. Natalie's strategic decisions as to how to cross-examine witnesses are "entitled to a 'strong presumption' of professional reasonableness."[70]

In his Response to Madison's Amended Motion, Mr. Natalie addressed Madison's cross-examination claims. Regarding Madison's charge that he failed to

---

[69] *Ellerbe*, 2016 WL 4119863, at *3.

[70] *Ragland*, 2009 WL 2509132, at *2

-17-

cross-examine on the issue of inconsistencies in a detective's report, Mr. Natalie stated: "trial counsel believed then, and continues to believe now, that to re-explore" the possible inconsistencies suggested by Madison "would not have helped [Madison]."[71] And as to Madison's claim that Mr. Natalie failed to cross-examine witnesses on prior inconsistent statements, Mr. Natalie stated: "[E.C.]'s trial testimony, by leaving out several significant utterances by [A.T.], helped the Defendant's case by failing to support her statement and testimony. Trial counsel intentionally let the discrepancy stand by itself to establish that the utterances never occurred."[72] He explored fully that "[E.C.] had been drinking, perhaps excessively, and that alone served to affect his credibility."[73] And lastly, Mr. Natalie argued discrepancies, inconsistencies and credibility during his closing argument.[74]

"'[I]t is not this Court's function to second-guess reasonable trial tactics.'"[75] Mr. Natalie's own statements clearly explain the strategic decisions he made on how to proceed on cross-examination. Those decisions are "entitled to a 'strong

---

[71]     Aff. of Trial Counsel Resp. to Am. Mot. for Postconviction Relief at 3.

[72]     *Id.*

[73]     *Id.* at 4.

[74]     App. to Def.'s Mot. at A201–04.

[75]     *Ellerbe*, 2016 WL 4119863, at *3.

-18-

presumption' of professional reasonableness."[76]  Madison fails to point to any evidence suggesting Mr. Natalie's performance was not objectively reasonable. He, therefore, cannot satisfy the first prong of *Strickland*.

Madison's claims additionally fail to meet the burden under the second prong of *Strickland* by not showing how Mr. Natalie's performance at trial was prejudicial to the outcome.[77]  The State presented overwhelming evidence in support of the charges of which Madison was finally convicted.  That included, among other things, Madison's own confession to entering the house, assaulting the victims, and his other acts during the incident.  Substantial trial evidence regularly defeats thin claims of prejudice.  Delaware courts consistently find those convicted not prejudiced by their trial counsels' performance in light of the weight of other evidence presented at trial.[78]  Given the overwhelming weight of the State's evidence here, it is unlikely that the possible impeachment testimony Mr. Natalie might have elicited via a different cross-examination would have resulted in acquittal in this bench trial.  And

---

[76]     *Ragland*, 2009 WL 2509132, at *2.

[77]     *See supra* note 50, at 13.

[78]     *See Ellerbe*, 2016 WL 4119863, at *4 (holding that "it is unlikely that . . . additional testimony would have overcome the overwhelming evidence against Ellerbe"); *Drummond v. State*, 2002 WL 1472281, at *2 (Del. 2002) (holding that "[i]n view of the overwhelming evidence of Drummond's guilt, . . . including his confession and his flight from the crime scene, Drummond cannot establish actual prejudice from his trial counsel's failure to more thoroughly cross-examine Officer Evans on his observations during the stop"); *Neal v. State*, 80 A.3d 935, 946 (Del. 2013) ("Given the overwhelming record evidence that supports the accomplice's testimony, Neal cannot show a reasonable probability that the jury would have come to a different result [but for trial counsel's decisions.]").

Madison has not pointed to any potential testimony that introduces a reasonable possibility of altering the outcome of his trial. Therefore, Madison's claims of ineffective assistance of counsel alleging deficient cross-examination are **DENIED** for failing to satisfy the *Strickland* standard.

### 2. *Madison Fails to Show Trial Counsel's Ineffectiveness in Failing to Test DNA and Blood Evidence*

Madison next argues trial counsel's ineffectiveness in failing to have DNA and blood evidence tested. Madison takes the position that he cannot proceed on this claim without access and permission to test the evidence to determine whether the failure to test the evidence at trial was ineffective. Yet, he contends that the swabs do not contain blood, and that would have bolstered his defense that the rape did not occur. But again, Madison fails to show either that Mr. Natalie's conduct fell below an objectively reasonable standard, or that testing the DNA or blood evidence would have resulted in a different outcome at trial.

In *Jackson v. State*, the defendant claimed his counsel was ineffective for failing to "conduct independent forensic tests of the physical evidence[.]"[79] The Supreme Court affirmed this Court's finding "that trial counsel made a reasonable tactical decision not to hire or consult additional forensic experts to test the physical

---

[79]     770 A.2d 506, 511 (Del. 2001).

-20-

evidence placing Jackson at the scene of the crime."[80]  The Court pointed to the overwhelming amount of other evidence.  That evidence included Jackson's lack of an alibi, witness testimony about Jackson's statements, witness testimony about having seen "the fruit of the burglary" in Jackson's apartment, and a witness statement about seeing "Jackson place a bloody glove in a garbage can."[81]  In turn, the Supreme Court concluded that the Superior Court was correct in holding that given the weight of the other evidence, "it was not improper for counsel to forgo forensic testing of the crime scene evidence."[82]

The Delaware Supreme Court revisited the issue in *Staats v. State*, in which the defendant argued that untested DNA evidence had potential exculpatory value.[83] The Superior Court had previously held that trial counsel's "decision not to hire an independent DNA expert was reasonable and does not amount to ineffective assistance of counsel."[84]  The Supreme Court affirmed the Superior Court's holding, citing *Jackson*.[85]  The Court noted that, similar to *Jackson*, there was "strong

---

[80]     *Jackson*, 770 A.2d at 513.

[81]     *Id.*

[82]     *Id.*

[83]     *Staats v. State*, 961 A.3d 514, 518 (Del. 2008).

[84]     *Id.*

[85]     *Id.*

-21-

evidence placing Staats at the scene of the crime and implicating him in the murder."[86]

Here, Madison again fails to overcome the "strong presumption that counsel's performance fell within the wide range of reasonable professional assistance."[87] Mr. Natalie, in his response to Madison's Amended Motion, stated: "[g]iven [Madison's] own statement, the independent scientific examination of case evidence would be superfluous or irrelevant, not to mention potentially prejudicial to [Madison] himself."[88] Mr. Natalie made a strategic decision when he chose not to have the evidence tested. Having acquired any potential trial benefit of that decision with unsatisfactory results, Madison's postconviction counsel has changed course. The Court will not indulge such tactical vacillation.[89]

Too, Madison again fails to show that Mr. Natalie's decision prejudiced the outcome of his trial. In Madison's case, much like that of *Jackson* and *Staats*, the potential evidence from the DNA and blood would not have overcome the overwhelming weight of evidence presented at trial as to the issue of consent on the

---

[86]    *Staats*, 961 A.3d at 518.

[87]    *Drumgo v. State*, 2012 WL 1377596, at *2 (Del. Apr. 17, 2012).

[88]    Aff. Of Trial Counsel Resp. to Am. Mot. for Postconviction Relief at 4.

[89]    *See Anderson v. State*, 831 A.2d 858, 868 (Del. 2003).

rape charges. This evidence includes Madison's own admissions, victim testimony, and the medical evidence.

Madison fails to establish either that Mr. Natalie's decision was deficient or that he was prejudiced by that decision. The Court therefore **DENIES** Madison's request for permission to test the DNA[90] and blood evidence as there is no reasonable probability that the results Madison hopes for would have then or would now change the outcome of his trial.

### 3. Because Madison's Ineffective Assistance of Counsel Claims Fail, His Claim of Cumulative Error is Without Merit

Notwithstanding those prior failures, Madison posits that the cumulative effect of his counsel's supposed errors denied him a fair trial. But, this cumulative argument gains no more traction than the others did severally. None of his complaints of error, either individually or cumulatively, demonstrate Madison was deprived a fair trial. More directly, because Madison has failed on each count to prove that his trial counsel was deficient and that, but for trial counsel's performance, the outcome of the trial would have been different, he fails in the aggregate.

The Delaware Supreme Court addressed a similar cumulative effect argument in *Hoskins v. State*.[91] The Supreme Court utilized a plain error standard of review

---

[90] *See generally* DEL. CODE ANN. tit. 11, § 4504(a) (2017) (governing a prisoner's entitlement to post-conviction DNA testing).

[91] 102 A.3d 724 (Del. 2014).

and looked for "material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[92] Under this analysis, the Court noted that "none of [the defendant's] individual claims of ineffective assistance have merit because of a failure to show prejudice," and, consequently, found the defendant's "claim of cumulative error [ ] without merit."[93]

Madison fails to establish prejudice under each of his individual trial performance claims. Therefore, Madison has not established any due process violation based on cumulative error sufficient to grant him relief. His motion is **DENIED** on this ground.

### 4. Madison Fails to Show that Mr. Natalie was Ineffective for Failing to Communicate and Effectively Advise Madison on Plea Possibilities

Madison's Supplement to the Amended Motion presents two additional claims. Madison suggests that Mr. Natalie was ineffective for failing to properly advise him of the elements of the crimes that ultimately resulted in his conviction: specifically, that Mr. Natalie lead Madison to erroneously believe that he could not be convicted of rape without proof of penetration, and later failed to effectively

---

[92] *Hoskins*, 102 A.3d at 735.

[93] *Id.*

-24-

communicate a plea offer to Madison. This false information, Madison argues, caused him to reject a plea offer he might otherwise have accepted.

Madison cites to *Lafler v. Cooper* in support of his position that he was denied effective assistance of counsel when considering his own plea bargain. In *Lafler*, the defendant's sentence was remanded and the State made to reoffer a plea deal due to trial counsel's deficient performance.[94] The United States Supreme Court stated that "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."[95] Unlike the present case, in *Lafler*, "all parties agree[d] the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be [as a matter of law] convicted at trial."[96]

### a. Madison Fails to Show Trial Counsel was Objectively Unreasonable in Advising Him on the Elements of Rape

Madison cites no compelling evidence that suggests Mr. Natalie misled him as to the elements of rape. Madison points to Mr. Natalie's opening statement, selectively quoting trial counsel as saying, "[W]ithout penetration, you don't have a rape."[97] In fact, Natalie was referring to the specific charge of rape by digital

---

[94]     *Lafler v. Cooper*, 566 U.S. 156, 174–75 (2012).

[95]     *Id.* at 163.

[96]     *Id.*

[97]     Def.'s Suppl. Mot. at 3.

-25-

penetration when he made the comment: "[Madison is] charged with raping [A.T.] by digital penetration. And that's significant, because, without penetration, you don't have a rape."[98] Madison's other evidence similarly appears to refer to the charge of rape by digital penetration and is, at best, unclear. Mr. Natalie states that Madison was provided "with a copy of the [statutes] pertaining to each of the indicted charges as well as the applicable SENTAC guidelines and notes. We reviewed them together. In this case, the State alleged three counts of Rape First Degree. One required proof of penetration and two did not."[99] *Lafler* is therefore inapposite here, as Madison, unlike the defendant in *Lafler*, fails to clear *Strickland*'s performance hurdle and show that Mr. Natalie's advice regarding the counts of rape was objectively unreasonable.[100]

> b. Madison Fails to Show that Trial Counsel Did Not Effectively Communicate Plea Deals

Madison additionally claims that because of Mr. Natalie's allegedly misleading advice on the counts of rape, and due to Mr. Natalie's failure to effectively communicate plea deals available to him, Madison rejected a plea offer he might otherwise have accepted. Madison refers to a supposed 15- or 19-year pre-

---

[98] Tr. of Trial, *State v. Jerome Madison*, ID No. 1312014951, at 11:4–7 (Del. Super. Ct. Sept. 24, 2014) (D.I. 60) (hereinafter "Tr. of Trial").

[99] Letter of Trial Counsel Resp. to Suppl. Am. Mot. for Postconviction Relief at 2.

[100] *See Lafler*, 566 U.S. at 162–63.

-26-

trial plea offer, but acknowledges that his counsel "has been unable to locate a written copy of either of these plea proposals."[101] Mr. Natalie contends that while he repeatedly requested a 15-year plea from the State, no such offer was ever made.[102] The State agrees that it never extended such an offer to Madison.[103] Mr. Natalie cannot be found to have ineffectively communicated a plea deal that never existed.

The record reflects that Mr. Natalie communicated the pre-trial plea deal of twenty-five years,[104] which Madison rejected,[105] and a mid-trial plea deal of twenty-

---

[101]    Def.'s Suppl. Mot. at 5. The only suggestion there was a "19-year" offer is from a passing reference by Mr. Natalie at a plea-by-appointment calendar before a different judge. Tr. of Plea by Appointment Hearing, *State v. Jerome Madison*, ID No. 1312014951, at 2 (Del. Super. Ct. June 19, 2014). But there is no other record evidence of any such offer being made. And certainly the totality of the record here fails to demonstrate that Madison would have accepted such an offer, that the State would not have cancelled it, or that Madison could have ever made it through a colloquy that would have allowed the Court to accept such plea from him. *See Missouri v. Frye*, 566 U.S. 139, 147–49 (2012) (explaining prejudice prong in plea bargaining ineffectiveness case, i.e., inmate must demonstrate he would have actually accepted the alleged plea offer and it would have been entered by the Court). To the contrary, the record of this case demonstrates that Madison never would knowingly, voluntarily and intelligently enter any plea of guilt.

[102]    Letter of Trial Counsel Resp. to Suppl. Am. Mot. for Postconviction Relief at 3.

[103]    State's Suppl. Resp. at 4 ("There is no evidence in the record that a plea to fifteen years was ever offered by the State.").

[104]    *See* Plea Agreement, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. June 19, 2014) (charging one count each of Rape First, Home Invasion, Possession of a Deadly Weapon During the Commission of a Felony, Kidnapping First, and Assault Second).

[105]    Tr. of Plea by Appointment Hearing at 3 (conveying Madison's rejection of the plea to Judge Butler and stating that "[Madison] has asked me to file a number of motions" in the matter).

-27-

three years,[106] which Madison also rejected.[107] Colloquies exploring each plea possibility were held. Neither colloquy demonstrates Madison's sincere willingness to ever enter a guilty plea. Madison fails to meet his burden under *Strickland* of showing that, but for Mr. Natalie's performance, he would have ever accepted any plea bargain.[108] And so, this ineffectiveness claim fails also.

5. *Because Madison is Not Entitled to Relief, No Evidentiary Hearing is Required*

Finally, Madison requests an evidentiary hearing.[109] Under Rule 61, "[t]he Superior Court has discretion to determine whether to hold an evidentiary hearing."[110] And where it is apparent on the face of a postconviction motion, the

---

[106] *See* Plea Agreement, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Sept. 24, 2014) (charging one count each of Rape First, Home Invasion, Possession of a Deadly Weapon During the Commission of a Felony, and Assault Second).

[107] Tr. of Trial at 115–116.

[108] *See Frye*, 566 U.S. at 147–49 ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel . . . [and] must also show that, if prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented."). The record is clear that Madison never wanted to accept responsibility for his actions, never could admit his guilt, and certainly could never engage in a colloquy to do so that would satisfy Delaware law and this Court's requirements to do so.

[109] *See* DEL. SUPER. CT. CRIM. R. 61(h)(1) (providing the Court, after reviewing the record developed in the postconviction proceedings, "shall determine whether an evidentiary hearing is desirable.").

[110] *Johnson v. State*, 2015 WL 8528889, at *4 (Del. Dec. 10, 2015).

-28-

responses thereto, the record of prior proceedings, and any added materials that the petitioner is not entitled to relief, there is no need for an evidentiary hearing.[111] After consideration of the complete evidentiary record and the legal issues raised, Madison's request for an evidentiary hearing is **DENIED**.

## IV. CONCLUSION

Madison has shouldered neither his burden of showing objective unreasonableness of his trial counsel's conduct, nor his burden of showing he suffered any prejudice as a result of his trial counsel's performance. He's also failed to demonstrate that any *Brady* violation occurred here. And so, Madison's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

Original to Prothonotary

cc: Karin M. Volker, Deputy Attorney General
Christopher S. Koyste, Esq.
Jerome Madison, *pro se*
Investigative Services Office

---

[111] *Johnson*, 2015 WL 8528889, at *4 (quoting *Hawkins v. State*, 2003 WL 22957025, at *1 (Del. Dec. 10, 2003)).